**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 13-cv-02271-CMA

ANTHONY DARNELL DAVIS,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

**ORDER REVERSING AND REMANDING ALJ'S DECISION**
**DENYING SOCIAL SECURITY BENEFITS**

---

Plaintiff Anthony Darnell Davis, a thirty-five-year-old Iraq war veteran, alleges he suffers from, among other things, disabling depression; post-traumatic stress disorder (PTSD); and pain in his wrist, back, shoulders, and feet.  An Administrative Law Judge, disagreed, reasoning that while Plaintiff suffered from these and other impairments, they were not disabling.  After the ALJ made his decision, Plaintiff submitted supplemental records from doctors and the Veterans Administration that strongly support his preferred interpretation of the severity of some of his ailments—in particular, his mental health functioning.  This additional evidence casts sufficient doubt on the ALJ's original decision to require remand of this case for further consideration.

## I.   <u>BACKGROUND</u>

Like many Social Security Appeals, the parties present two competing narratives on how Plaintiff's physical and mental impairments affect his life and impact his

disability claim.  On the one hand, Plaintiff emphasizes medical findings that could be interpreted as indicative of more severe, constant, and therefore disabling impairments. In support of this position, he points to parts of the record in which medical professionals expressed graver concerns about the effects on his daily life of his musculoskeletal pain, his depression, his combat-related PTSD, and the lingering effects of an episode that occurred in July 2012, in which he suffered from a major depressive episode, contemplated suicide, and spent time in a mental health facility.[1] On the other hand, other parts of the record—referenced mainly by the Government— do not paint such a bleak prognosis for Plaintiff's physical or mental health.[2]

---

[1] *See, e.g.*, (AR 803, 809) (medical records recording "tenderness on palpation" and "spasms" for muscles in Plaintiff's shoulder); (AR 698-705) (November 2012 record from Dr. Adrienne French who indicated, among other things, that Plaintiff tested positive on some clinical tests designed to register pain in his shoulders and wrists); (AR 179) (report of Plaintiff's July 2012 major depressive episode, in which he presented to a mental health facility with suicidal ideation, depression, and PTSD symptoms and stayed in the facility for seven days); (AR 338-343) (self-reporting from Plaintiff about his low quality of life and references to the July 2012 episode).

[2] *See, e.g.*, (AR 701-04) (November 2012 report from Dr. French concluding that none of Plaintiff's reported physical conditions—including migraines, sleep apnea, spondylosis of the thoracic and lumbar spine, chronic bilateral wrist strain, bilateral knee condition, bilateral shoulder strain, bilateral plantar fasciitis, breast surgery residuals, chronic diarrhea, and bilateral hand tremor—affected his ability to perform his usual occupation or his ability to engage in usual daily activities); (AR 675) (November 2012 report from an examining physician stating that Plaintiff reported he could walk for two miles and lift and carry up to thirty pounds); (AR 160) (July 2012 discharge report from attending physician at the mental health facility, in which she describes Plaintiff as "not gravely disabled" and in stable condition after his major depressive episode); (AR 710) (October 2012 psychiatric examination report completed by Dr. Brad Mallory noting, *inter alia*, that Plaintiff suffered from PTSD but concluding that his mental health outlook was good because of his compliance with treatment and his supportive wife); (AR 834) (January 2013 report from Dr. Grenier assigning Plaintiff a GAF score of 63, which is indicative of no more than mild mental health symptoms); (AR 45-46) (report from a nonexamining state psychologist who reviewed the record as of December 2012 and found that Plaintiff had no restriction of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, and no extended episodes of decompensation).

In considering these two competing portraits of Plaintiff's life and alleged disabilities, the ALJ endorsed more of the latter narrative and discounted much of the former.  To be sure, the ALJ recognized that Plaintiff had one major depressive episode (in July 2012) and continued to deal with the challenge of his PTSD.  The ALJ also acknowledged that Plaintiff had to endure some amount of musculoskeletal pain.  However, the ALJ concluded that while these challenges limited the type of work Plaintiff could perform, they did not preclude all work and did not warrant a finding of disability.  (AR at 12-21.)

After the ALJ rendered his decision, Plaintiff provided two additional records that he claims would have affected the ALJ's decision.  The first is a post-decision letter dated May 4, 2013, in which Dr. Charles Salerno and Mary Ann Carter—respectively, a social worker and a medical doctor—suggest that he has suffered from "devastat[ing]" combat-related PTSD that renders him incapable of normal functioning for large portions of the work week.  (AR 839.)  Dr. Salerno and Ms. Carter—who apparently treated Plaintiff "weekly to biweekly" from May 2011 to October 2012[3]—also provide what is mostly a check-the-box evaluation of Plaintiff's mental residual functional capacity and conclude that he is precluded from performing most types of tasks.  (AR 836-38.)

The second record is an opinion from the Department of Veteran Affairs (VA), finding that, as relevant here, Plaintiff is 70 percent disabled as a result of his PTSD

---

[3]  As the Government notes (Doc. # 20 at 23), Plaintiff has never clarified the exact nature of treating relationship he has with these medical professionals.  The Court presumes he will do so on remand.

but is only ten percent disabled as a result of many physical impairments (such as pain and lack of mobility in his wrists and shoulders).  (Doc. # 15-1 at 4.)  According to the VA, this yields an overall disability rating of 90 percent.  (*Id.* at 6.)

## II.  <u>STANDARD OF REVIEW</u>

This Court's review of the ALJ's determination as to Plaintiff's disabilities is limited to determining whether the ALJ's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla but less than a preponderance.  *Wall*, 561 F.3d at 1084.  In reviewing the record and the arguments of counsel, the Court does not reexamine the issues de novo, *Sisco v. United States Department of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993), nor does it re-weigh the evidence or substitute its judgment for that of the Commissioner, *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  Thus, even when some evidence may have supported contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo."  *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).  This Court applies the above standard in considering each of Plaintiff's challenges to the ALJ's decision.

## III. <u>ANALYSIS</u>

### A.     PHYSICAL IMPAIRMENTS

Plaintiff's first argument relates to a determination the ALJ made at step two of the five-part process for evaluating an alleged disability, when the ALJ must determine whether Plaintiff is suffering from any severe impairments.  In this case, the ALJ concluded that Plaintiff had the following severe impairments: affective disorder, PTSD, spondylosis, obesity, and alcohol abuse, in remission.  (AR 14)

Plaintiff argues this list should have also included a number of additional musculoskeletal impairments such as myofascial pain with fibromyositis nodules and active trigger points causing pain in his neck, shoulders, wrists, and knees; chronic residual pain.  He also suggests—with no argument—that the list should have included impairments such as disruptive sleep apnea, severe headaches, and dizziness and fatigue.

An impairment is "not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also Williamson v. Barnhart,* 350 F.3d 1097, 1100 (10th Cir.2003) ("[A] claimed 'physical or mental impairment must be of a nature and degree of severity sufficient to justify its consideration as the cause of failure to obtain any substantial gainful work.'").  Further, "while the showing a claimant must make at step two is de minimis, a showing of the mere presence of a condition is not sufficient." *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008).

The ALJ committed no reversible error in limiting his finding of severe physical impairments to those listed above.  First, Plaintiff presents no actual argument as to why his non-musculoskeletal impairments should have been considered severe.  To the extent that he alleges error as to these impairments (i.e., those related to sleep apnea, for example), he has waived the argument for want of sufficient briefing.  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those contentions that have been adequately briefed for review."); *Murrell v. Shalala*, 43 F.3d 1388, 1390 (10th Cir. 1994) (reasoning, in the Social Security context, that "perfunctory complaints [that] fail to frame and develop an issue sufficient to invoke appellate review" are forfeited and collecting further authorities in support of this proposition).

Second, substantial evidence—principally, Dr. Adrienne French's evaluation of Plaintiff (referenced in footnote two above) combined with Plaintiff's self-reporting in November 2012 of his ability to carry thirty pounds and walk two miles—supports the ALJ's decision to consider these impairments non-severe.  *See* (AR 702-04).  To be sure, as was mentioned above, Plaintiff seeks to emphasize the parts of the record where other health care professionals noted that Plaintiff had pain (or at least reported he had pain) in his shoulders and wrists.  *See* (Doc. # 18 at 6-8.)  But reports of such ailments by themselves do not make them severe.  *Cowan*, 552 F.3d at 1186.  Further, weighing the import of reports that suggest Plaintiff is enduring more pain against those, such as the one prepared by Dr. French, that suggest he is in less pain, is a task to be

undertaken by the ALJ and one not to be revisited by this Court.  *See Salazar*, 468 F.3d

at 621.

Relatedly, at Step Four of the Five-Part analysis, the ALJ in fact acknowledged

that Plaintiff had "tenderness to palpation as well as muscle spasm and pain on range of

motion," relying on reports for Plaintiff's outpatient care from July 2012.  (AR 18 (citing

AR 251).)  The ALJ further accepted that Plaintiff "had evidence of myofascial tightness

and tenderness with trigger points" and "pain in range of motion testing."  (AR 18).

At the same time, the ALJ concluded "given the minimal findings on examination and

the conservative nature of the treatment [as to these impairments], no additional

limitations" to Plaintiff's residual functional capacity were warranted.  (AR 18.)

Plaintiff advances no specific argument as to why these rationales for discounting

the severity of Plaintiff's shoulder and wrist pain—i.e., that treatment was conservative

and there were minimal findings—are deficient or inaccurate.  Further, these rationales

are consistent with Dr. French's evaluation of Plaintiff's impairments.  Thus, any alleged

error at Step Two became harmless, because the ALJ considered these ailments at

Step Four and rejected them as inconsistent with the weight of the record evidence.

*See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("any error here became

harmless when the ALJ reached the proper conclusion that [the claimant] could not

be denied benefits conclusively at step two and proceeded to the next step of the

evaluation sequence").

B.     MENTAL IMPAIRMENTS

Plaintiff next challenges the ALJ's evaluation of his mental impairments,

suggesting he meets the requirements of a listing of impairments under §§ 12.04 and

12.06.  More broadly, Plaintiff challenges the ALJ's determination that he had only

moderate difficulties in social functioning.

Plaintiff argues the ALJ erred in reaching these conclusions and adopting this

reasoning, but his attorneys provide very little in the way of actual argument or analysis

to support his position.  Rather, all these attorneys have done is: (1) copied and pasted

the relevant law and regulations regarding listing impairments or the general

requirements for determining a social functioning RFC; and (2) copied and pasted,

in block-quote form, parts of several pages of record evidence that concern his prior

mental health evaluations.  (Doc. # 18 at 11-19.)  This copy-and-paste job falls well

below the standard this Court considers necessary to evaluate a legal claim, and

Plaintiff flirts with forfeiture in the manner he has presented this claim.  *Cf. Keyes-

Zachary*, 695 F.3d at 1161.

In spite of his attorneys' inadequate briefing, this Court must remand because the

additional evidence provided after the ALJ made his decision casts sufficient doubt on

how Plaintiff's mental impairments—specifically, his PTSD and depression—affect his

ability to work.

As an initial matter, this Court notes that there was considerable evidence **in the

record before the ALJ** to support the ALJ's conclusion that Plaintiff's mental health

impairments are not disabling.  For example, in the fall of 2012, two treating physicians,

Drs. Mallory and Grenier, gave Plaintiff a generally positive mental health prognosis and nowhere concluded that Plaintiff's depression and PTSD were disabling. *See* (AR 710, 834.)  Plaintiff's apparent strategy when confronted with this evidence is to simply ignore it—it is nowhere cited in his opening brief or reply—even if this record evidence undergirded the ALJ's decision to find no disabling mental health impairments, *see* (AR 18-19), and even if the Government raises these same arguments in its Response, (Doc. # 20 at 13-14.)

At the same time, there was also evidence in that record to support Plaintiff's claim that his combat-related PTSD—combined with depression—was disabling. *See, e.g.*, (AR 778) (report from one mental health professional noting that when Plaintiff was prompted to remember his time in Iraq and his need "to protect my men," that "[t]ears started running down his face" before he "abruptly shifted to anger, slammed his fists into the table[,] got up and lifted it suddenly a few feet, knocking items on to the floor").

Further, as noted above, Plaintiff now supplements such supportive evidence with further records from other physicians and the VA.  First, there is the aforementioned record signed by Dr. Salerno, who appears to have been treating Plaintiff's mental health needs almost weekly for over a year and attests to the debilitating effects of his PTSD.  Second, there is the aforementioned record from the VA, which determined—based on a review of somewhat different evidence[4] than what was presented to the ALJ—that Plaintiff was disabled.

---

[4]  The Government notes that some of the records reviewed by the VA were the same as those reviewed by the ALJ.  (Doc. # 20 at 24 (noting that the VA opinion appears to rely on the same examinations of Plaintiff rendered by Drs. Mallory, French, and Struck).)  At the same time, it

Case 1:13-cv-02271-CMA   Document 29   Filed 09/04/14   USDC Colorado   Page 10 of 12

The Tenth Circuit has directed that remand is appropriate if this Court finds that the ALJ's decision "might reasonably have been different" if the new evidence had been before him. *Cagle v. Califano,* 638 F.2d 219, 221 (10th Cir. 1981). That standard is met here: both records under consideration suggest that Plaintiff's mental impairments are disabling, and such findings—if presented to the ALJ in the first instance—must be considered, must generally be granted greater weight, and can be discounted only if the ALJ provides specific reasons for doing so.[5]

To be sure, this additional evidence does not **mandate** a finding of disabling mental health impairments—an ALJ can discount both the opinions of a treating physician and another agency, if such a position is supported by substantial evidence—but these two records deserve to be considered in the first instance by the ALJ.

---

appears that the VA relied on additional records, including a more comprehensive list of service treatment records, an audio examination of Plaintiff, and what is referred to as a "Commander's Performance and Functional Statement." (Doc. # 15-1 at 11.) Further, although the effective date of the VA's finding of disability post-dates the date of the ALJ's decision, the VA appears to rely only on records that predate the ALJ's decision. The Court presumes that Plaintiff will provide this record evidence to the ALJ on remand.

[5] While it is well established that a treating physician's assessment must be considered and be accorded controlling weight absent a showing of specific reasons to disregard it, *see, e.g.*, *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), the Tenth Circuit rule for how the ALJ must consider VA disability findings is less clear. The Tenth Circuit has held that the ALJ must consider the VA's finding of disability, *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005), and it has held that another agency's findings of disability are entitled to at least some weight, *see Baca v. Dep't of Health & Human Servs.,* 5 F.3d 476, 480 (10th Cir.1993). At the same time, the Tenth Circuit does not appear to have determined exactly how much weight to give a finding from the VA and what showing is necessary to disregard this finding. *See, e.g.*, *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (holding that a VA's determination of disability is accorded "great weight" in the Ninth Circuit because of the similarities in the disability programs but suggesting that some circuits—including the Tenth—have not yet addressed this issue). This Court need not resolve this matter here as the combined effect of the unconsidered record evidence merits remand. The Court leaves it to the ALJ to address this matter in the first instance (if necessary).

*Cf. Kanelakos v. Astrue*, 249 F. App'x 6, 8 (10th Cir. 2007) (remanding to the ALJ because the VA's 100 percent disability finding was insufficiently explained).  The Court therefore grants a limited remand solely for the purpose of further exploring whether Plaintiff's mental health impairments are disabling.

Further, the ALJ's credibility assessment, his analysis at Step 5, and his analysis of the cumulative effect of all of Plaintiff's severe and non-severe impairments are based at least in part on his assessment of the severity of Plaintiff's mental health functioning.  Plaintiff alleges a number of errors with these specific findings from the ALJ, but this Court declines to address them at this time, in light of the fact that the mental health finding upon which these findings rely has been called into question by the new evidence discussed above.[6]

Finally, on remand, the ALJ should reconsider both whether Plaintiff's mental impairments equal one of the listings outlined by Plaintiff in his briefing and whether, regardless of whether the impairments equal a listing, they are otherwise sufficiently disabling to preclude Plaintiff from working.

---

[6]  For this reason, the Court also declines to address a number of sub-arguments that Plaintiff raises in his briefing—such as, whether the ALJ should have consulted a medical expert in determining whether Plaintiff's severe and non-severe impairments cumulatively met a listing requirement, whether the ALJ failed to adequately develop the record in light of Plaintiff's *pro se* status at the hearing before the ALJ, and whether the ALJ improperly rejected the opinion of the Disability Determination Services consultant.  Again, the ALJ's resolution of these matters is linked to the mental health functioning assessment and must be revisited on remand.

## IV. <u>CONCLUSION</u>

The ALJ must reconsider this case in light of the new evidence presented after he made his original decision.  Accordingly, it is ORDERED that the ALJ's denial of disability benefits is REVERSED and this case is REMANDED for further proceedings consistent with this order.

DATED:  September 4, 2014

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge